# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP; GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC.; and their members.<br><br>*Plaintiffs,*<br><br>v.<br><br>BRAD RAFFENSPERGER, Secretary of State of Georgia, in his official capacity,<br>*Defendant,*<br><br>REPUBLICAN NATIONAL COMMITTEE and GEORGIA REPUBLICAN PARTY, INC.<br>*Proposed Intervenor-Defendants.* | Case No: 1:24-cv-04287-TWT |

## MOTION TO INTERVENE

The Republican National Committee (RNC) and Georgia Republican Party, Inc. (GAGOP) move to intervene as Defendants in this case. When Plaintiffs previously challenged Georgia's election laws in this Court, the RNC and GAGOP successfully intervened. *Ga. State Conf. of NAACP v. Raffensperger*, Doc. 40, No. 1:21-cv-1259 (N.D. Ga. June 4, 2021). In fact, in recent challenges to Georgia's election laws, this Court has always allowed political committees—including Movants—to intervene to protect their interests in the laws

1

and rules governing Georgia's elections.[1] Movants are unaware of any ruling in the Northern District of Georgia denying any national political committee intervention in a case challenging Georgia's election laws. For good reason—in such cases, national political committees "are not marginally affected individuals; they are substantial organizations with experienced attorneys who might well bring perspective that others miss or choose not to provide." *Nielsen v. DeSantis*, No. 4:20-cv-236, 2020 WL 6589656, at *26-27 (N.D. Fla. May 28, 2020). That is why district courts throughout the Eleventh Circuit have allowed Republican Party organizations to intervene in cases that challenge election rules.[2] This Court should grant the motion for two independent reasons.

*First*, Movants satisfy the criteria for intervention by right under Rule 24(a)(2). This motion is timely. Plaintiffs' complaint was filed less than three

---

[1] *E.g.*, *Int'l All. of Theater Stage Emps. Local 927 v. Lindsey*, Doc. 84, No. 1:23-cv-4929 (N.D. Ga. May 3, 2024) (granting intervention to the RNC and GAGOP); *United States v. Georgia*, Minute Order, No. 1:21-cv-2575 (N.D. Ga. July 12, 2021) (granting intervention to the RNC, NRSC, NRCC, and GAGOP); *Coal. for Good Governance v. Raffensperger*, Minute Order, No. 1:21-cv-2070 (N.D. Ga. June 21, 2021); *Concerned Black Clergy of Metro. Atlanta v. Raffensperger*, Minute Order, No. 1:21-cv-1728 (N.D. Ga. June 21, 2021); *Sixth Dist. of the African Methodist Episcopal Church v. Kemp*, Minute Order, No. 1:21-cv-1284 (N.D. Ga. June 4, 2021); *Vote Am. v. Raffensperger*, Doc. 50, No. 1:21-cv-1390 (N.D. Ga. June 4, 2021); *Asian Ams. Advancing Justice-Atlanta v. Kemp*, Doc. 39, No. 1:21-cv-1284 (N.D. Ga. June 4, 2021); *Wood v. Raffensperger*, Doc. 14, No. 1:20-cv-5155 (N.D. Ga. Dec. 28, 2020) (order granting intervention to the Democratic Party of Georgia and the DSCC); *Black Voters Matter Fund v. Raffensperger*, Doc. 42, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020).

[2] *E.g.*, *Brown v. Detzner*, Minute Order, No. 3:12-cv-852 (M.D. Fla. Sept. 17, 2012); *Vote.Org v. Byrd*, Doc. 85, No. 4:23-cv-111 (N.D. Fla. May 26, 2023); *Harriet Tubman Freedom Fighters Corp. v. Lee*, Doc. 34, No. 4:21-cv-242 (N.D. Fla. July 6, 2021); *League of Women Voters of Fla. v. Lee*, Doc. 72, No. 4:21-cv-186 (N.D. Fla. June 4, 2021); *Fla. State Conference of Branches & Youth Units of the NAACP v. Lee*, Doc. 43, No. 4:21-cv-187 (N.D. Fla. June 8, 2021); *VoteVets Action Fund v. Detzner*, Doc. 16, No. 4:18-cv-524 (N.D. Fla. Nov. 11, 2018); *Jacobson v. Detzner*, Doc. 36, No. 4:18-cv-262 (N.D. Fla. July 1, 2018).

weeks ago. This litigation is still in its earliest stages, and no party will possibly be prejudiced. Movants also have a substantial interest in protecting Republican members, candidates, voters, and resources from Plaintiffs' attempt to upend Georgia's duly enacted election rules. Finally, no other party adequately represents Movant's interests. Adequacy is not a demanding standard, and the State Defendant does not share Movants' unique interests in protecting RNC resources and supporting Republican candidates and voters.

*Second*, in the alternative, the Court should grant Movants permissive intervention under Rule 24(b). As noted above, this motion is timely. Movants' defenses share common questions of law and fact with the existing parties, and intervention will not result in delay or prejudice. The Court's resolution of the important questions in this case will have significant impacts for Movants as they work to ensure that Republican candidates and voters can participate in upcoming Georgia elections.

Whether under Rule 24(a)(2) or (b), Movants should be allowed to intervene as Defendants. This Court often grants Movants permissive intervention under Rule 24(b), absolving the need to address intervention as of right under Rule 24(a). Movants maintain that they have a right to intervene under Rule 24(a), but also approve of that efficient resolution here.

## INTERESTS OF PROPOSED INTERVENORS

The Republican National Committee is a national committee as defined by 52 U.S.C. §30101. It manages the Republican Party's business at the national level, supports Republican candidates for public office at all levels, including in Georgia, coordinates fundraising and election strategy, and develops and promotes the national Republican platform. The RNC's membership consists of the party chair and national committeeman and national committeewoman for each State and territory, including multiple representatives from Georgia who are registered voters in Georgia.

The Georgia Republican Party is a political party in Georgia that works to promote Republican values and to assist Republican candidates in obtaining election to partisan federal, state, and local office. Both Movants have interests—their own and those of their members—in the rules and procedures governing Georgia's elections. That includes Georgia's upcoming elections in 2024 for federal and state office.

## ARGUMENT

### I.  The Republican Party has an unconditional right to intervene.

Movants are entitled to intervene as a matter of right under Rule 24(a). This Rule is to be construed liberally," *Adams Offshore, Ltd. v. Con-Dive, LLC*, 2009 WL 2971103, at *1 (S.D. Ala. 2009), and "[a]ny doubt concerning

the propriety of allowing intervention should be resolved in favor of the proposed intervenors," *Fed. Sav. & Loan Ins. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). Such an approach enables efficient resolution of "all related disputes in a single action." *Id.* Under Rule 24(a)(2), this Court must grant intervention by right if four things are true: (1) the motion is timely; (2) Movant has a legally protected interest in this action; (3) this action may impair or impede that interest; and (4) no existing party adequately represents Movant's interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). All four are true here.

### A.    The motion is timely.

Timeliness is determined by four factors: (1) the length of time after Movants knew of their interest in the case; (2) any prejudice to the existing parties from undue delay; (3) prejudice to Movants from denying intervention; and (4) any unusual circumstances. *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002). The "convenience" of the parties is irrelevant. *Clark v. Putnam Cty.*, 168 F.3d 458, 462 (11th Cir. 1999). All four factors favor Movants.

Movants filed this motion quickly—less than three weeks after Plaintiffs' complaint and before Defendant entered an appearance. A motion to intervene can be timely even if submitted seven months after the original complaint. *Chiles*, 865 F.2d at 1213; *see also Snadon v. SEW-Eurodrive, Inc.*, 2020 WL

13544217, at *1 (N.D. Ga. Nov. 4, 2020) (motion filed ten months after case removed to federal court was "not untimely"); *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (motion filed one year after answer not untimely). That the Court has not yet taken "significant action," *U.S. Army Corps of Eng'rs*, 302 F.3d at 1259-60, and "[n]o trial date has been set," *Naples 9, LLC v. EverBank*, 2011 WL 1884628, at *2 (M.D. Fla. May 18, 2011) further confirms the motion is timely.

Nor will Movants' intervention prejudice the parties. The case is "still at the answer stage," *New Ga. Project*, 2021 WL 2450647, at *2, and no party has filed any briefs or dispositive motions. Neither has this Court issued any substantive rulings. Movants will comply with all deadlines that govern the parties, will work to prevent duplicative briefing, and will coordinate with the parties on discovery. If the RNC is not allowed to intervene, however, its interests may be irreparably harmed by an order overriding Georgia's election rules. There are no unusual circumstances. Movants are filing at the earliest possible opportunity. This motion is timely.

**B.    The RNC has protected interests in this case.**

As the national committee of the Republican Party who represents members, candidates, and voters in every county in Georgia, the RNC has "'direct, substantial, legally protectible interest[s] in the proceeding.'" *Chiles*, 865 F.2d at 1213-14. Specifically, Movants want Republican voters to vote, Republican

6

candidates to win, and Republican resources to be spent wisely and not wasted on diversions. Such interests "are routinely found to constitute significant protectable interests" in election cases justifying intervention under Rule 24. *Issa v. Newsom*, 2020 WL 3074351, at *3 (E.D. Cal. 2020).[3] Further, Plaintiffs seek "to foreclose [Movants' members'] statutory right to challenge" the eligibility of deceased persons and non-residents on Georgia's voter rolls, giving Movants an additional "legally protected interest in the instant proceeding." *Greene v. Raffensperger*, No. 22-cv-1294, 2022 WL 1045967, at *2 (N.D. Ga. Apr. 7, 2022). Each of these interests will be addressed in turn.

*First*, Movants have an interest in Republican voters voting. This case implicates that legally protectable interest as a ruling in Plaintiffs' favor would do grave damage to the confidence of Republican voters in the integrity of Georgia's election system. Defending "the lawfulness" of the election rules that Plaintiff challenges and "protecting the integrity of [Georgia's] elections" alone is a sufficient interest to justify Movants' intervention in this case. *Black Voters Matter Fund*, No. 1:20-cv-4869, Doc. 42 at 5. Rules like the ones Plaintiffs challenge here serve "the integrity of [the] election process," *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), and the "orderly

---

[3] *E.g.*, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586-87 (5th Cir. 2006); *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 687 (7th Cir. 2023); *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007); *Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001).

administration" of elections, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.). Movants thus have a "direct and substantial interest" in this case because it will "affect" their "ability to participate in and maintain the integrity of the election process in [Georgia]." *La Union del Pueblo Entero*, 29 F.4th at 306.

Further, safeguarding Republican voter confidence in Georgia's electoral process also necessitates Movants' intervention. This confidence has "independent significance" as a protectible interest. *Crawford*, 553 U.S. at 197. Such voter confidence "is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Voter confidence and election integrity also have a direct effect on voter turnout, *see id.*, which is key to the Republican Party's mission to election of Republican candidates.

Plaintiffs' attempt to change the rules of the election will shake Republican voter confidence in the accuracy of Georgia's voter registration rolls, thereby deterring them from registering and turning out to vote. Plaintiffs seek a ruling that would strip Republican voters in Georgia of their ability to initiate proceedings to remove deceased persons and non-residents from the State's voter registration rolls thereby ensuring the accuracy of Georgia's rolls. Compl. at 49-50. If Plaintiffs succeed, "the confidence of [Movants'] members who are registered to vote in [Georgia] in the integrity of the electoral process" will be "undermined" as Republicans in Georgia will be deprived of an important tool

to ensure Georgia's voter registration rolls are accurate. *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012).

*Second*, Movants have an interest in Republican candidates winning. The Movants' "specific" interest in "promoting their chosen candidates" is sufficient by itself to justify intervention. *Black Voters Matter Fund*, Doc. 42 at 5. Plaintiffs seek a ruling that would effectively change the mailing address of all homeless voters for election purposes in Georgia. Compl. at 49-50. This would disrupt Movants' ability to communicate with such voters as Movants rely on the county registrar's office serving as the mailing address for homeless voters to reach such voters with voter registration and election related messages.

Plaintiffs also seek to undermine Republican voters' ability to take action to remove deceased persons and non-residents from Georgia's voter rolls. Compl. at 49-50. Movants rely on the accuracy of Georgia's voter-registration lists to determine their electoral strategy, the number of staff they need in a given jurisdiction, the number of volunteers needed to contact voters, and how much they will spend contacting voters. Preventing Republican voters from being able to file challenges to remove deceased persons and non-residents from Georgia's voter rolls will undermine the accuracy of those rolls thereby affecting the electoral prospects of candidates running as Republicans and requiring the Republican Party to adjust its electoral strategy for upcoming state and federal elections. Consequently, Movants' interest in "advancing the overall

electoral prospects" of Republican candidates, *Issa*, 2020 WL 3074351, at *3, is implicated by Plaintiffs' challenge to Georgia's voter registration procedures as well, Compl. at 49-50.

*Third*, Movants have an interest in Republican resources being spent wisely and not wasted on diversions. If this Court were to enjoin the challenged voter registration and election mail practices, the RNC would need to divert resources from other mission-critical activities, such as voter-turnout efforts, to counteract the injunction. Movants rely on accurate voter-registration lists and voter mailing addresses for a variety of its activities. *See supra*, p.11. The success of Movants' mission also depends on their ability to reach homeless voters quickly and accurately with election-related communications. Those activities cost money. Safeguarding the RNC's mission-critical activities from costs associated with sudden court-ordered changes in election procedures is a legitimate "interest" under Rule 24(a)(2). *E.g.*, *Siegel*, 234 F.3d at 1169 n.1; *Issa*, 2020 WL 3074351, at *3; *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2020 WL 5658703, at *11 (S.D.N.Y. 2020).

This interest is not "generalized" or shared by all Georgians. Not all Georgians have an interest in electing *Republicans* or conserving the resources of the *Republican Party*. As the Democratic Party has explained, political parties "have specific interests and concerns—from their overall electoral prospects to the most efficient use of their limited resources—that neither

defendants nor any other party in this lawsuit share." *Wood*, No. 1:20-cv-5155, Doc. 13 at 16. Plaintiffs invoke a similar interest in support of their standing to file this lawsuit. *See* Compl. ¶¶28, 30, 42 (alleging that Plaintiffs must "divert resources" in response to S.B. 189). If this interest is sufficient to support Plaintiffs' standing, then it is sufficient to satisfy the Rule 24(a) interest requirement to justify intervention by Movant. *See Chiles*, 865 F.2d at 1213 ("a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24"). In short, if Plaintiffs have standing to bring this lawsuit, then Movants have an interest in defending against this lawsuit. *See Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1480 (11th Cir. 1993) ("a movant who shows standing is deemed to have a sufficiently substantial interest to intervene").

*Fourth*, Movants have a legally protected interest in this case because it concerns the exercise of "statutorily conferred rights" upon Republican voters who are RNC and GAGOP members. *Greene*, 2022 WL 1045967, at *2. Specifically, Plaintiffs seek to foreclose the statutorily conferred right of Republicans to challenge the eligibility of deceased persons and non-residents listed on Georgia's voter rolls. Compl. at 49-50 (seeking injunction against voter challenge provision in Section 5 of S.B. 189). If Plaintiffs' lawsuit is successful, Movants' members who are registered to vote in Georgia would lose: (1) "the right to challenge" the eligibility of deceased persons and non-residents on Georgia's

11

voter rolls, (2) "the right to have that challenge heard," and (3) "the right to appeal that decision to the Superior Court." *Greene*, 2022 WL 1045967, at *2. A proposed intervenor has "established the requisite legally protected interest" to justify intervention by right when Plaintiffs' lawsuit places such statutorily conferred rights in jeopardy. *Id.* (lawsuit seeking to foreclose statutory right to challenge congressional representative's candidacy justified intervention by right). Therefore, Movants have "a direct, substantial, legally protectable interest in the proceedings" justifying intervention by right. *Id.*

## C.     This action threatens to impair Movants' interests.

Proceeding without the RNC "may as a practical matter impair or impede [the RNC's] ability to protect [its] interest." Fed. R. Civ. P. 24(a)(2). Given their inherent and intense interest in elections, usually "[n]o one disputes" that political parties "meet the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Col. Sept. 15, 2014). To prove potential impairment, Movants "need only show" that if it cannot intervene, "there is a possibility" that its "interest could be impaired or impeded." *La Union del Pueblo Entero*, 29 F.4th at 307. This is easily accomplished. Plaintiffs' request for injunctive relief, if granted, would "change the entire election landscape for those participating" in the upcoming election. *Id.* It would "change what [Movants] must do to prepare for upcoming elections." *Id.* And Movants will be forced to expend "resources to educate their members on the

shifting situation in the lead-up to the 202[4] election." *Id*. Each of these potential practical impairments standing alone are enough to justify intervention. Movants will plainly "suffer if the Government were to lose this case, or to settle it against [Movants'] interests." *Mausolf v. Babbitt*, 85 F.3d 1295, 1302-03 (8th Cir. 1996).

More concretely, granting Plaintiffs' requested relief will disrupt Movants' ability to effectively communicate by mail with homeless voters. *See supra*, p. 9-10. It also has the potential to result in more ineligible persons remaining on Georgia's voter rolls, which impairs Movants' interest in accurate registration lists. *Id*. Plaintiffs disagree, claiming that voter-initiated proceedings to remove deceased persons and non-residents from the State's voter rolls will "result in arbitrary, standardless, nonuniform, and discriminatory treatment of eligible voters." Compl. ¶10. But the opposite is true. Georgia's voter-initiated verification process ensures that voters and election officials have the necessary tools to maintain accurate voter rolls. Enjoining enforcement of that process inhibits Georgia's obligation to "ensure that voter registration records in the State are accurate and are updated regularly," which includes a "reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. §21083(a)(4). Though Plaintiffs disagree, "in resolving a motion to intervene," this Court "cannot assume" that Plaintiffs "will ultimately prevail on the merits." *Pavek v. Simon*, 2020 WL 3960252, at

*3 (D. Minn. July 12, 2020). At least for this motion, the Court must accept Movants' defenses as correct. *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984).

Because the "very purpose of intervention is to allow interested parties to air their views" before "making potentially adverse decisions," *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014), the "best" course is to give "all parties with a real stake in [the] controversy" an "opportunity to be heard." *Hodgson v. UMWA*, 473 F.2d 118, 130 (D.C. Cir. 1972). That includes Movants.

### D.   The Secretary does not adequately represent Movants' interests.

Inadequacy of representation is not a demanding standard. Rule 24(a)(2) requires this Court to allow Movants to intervene if existing party representation "'may be' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). And "the burden of making that showing should be treated as minimal." *Id.* Some courts outside the Eleventh Circuit raise the bar for inadequate representation in cases where government defendants are charged with defending the constitutionality of statutes. But as this Court recently explained, "this Circuit" does not apply a "heightened standard to motions to intervene." *Greene v. Raffensperger*, 2022 WL 1045967, at *3 (N.D. Ga. Apr. 7, 2022).

Rather, under binding case law in this Circuit, the presumption of adequate representation is so "weak" that it "can be overcome if the [Movant]

present[s] some evidence to the contrary"—for example, a "difference in interests." *Stone v. First Union Corp.*, 371 F.3d 1305, 1311-12 (11th Cir. 2004); *see also Chiles*, 865 F.2d at 1214 ("the burden of making that showing should be treated as minimal," and proposed intervenors "should be allowed to intervene unless it is clear that [the current parties] will provide adequate representation"). Even where a proposed intervenor has "similar, but not identical interests," to the State, the proposed intervenor's "interests are not adequately represented." *Id.* at 1312 (cleaned up); *see also Huff v. Comm'r*, 743 F.3d 790, 800 (11th Cir. 2014) ("[W]hile the Taxpayers have taken the same litigation position as [State Defendants]," their "interest in their overall tax liability is *not the same* as [State Defendants'] interest in how the taxes are apportioned." (emphasis added)).

Movants easily satisfy this minimal standard. No party to this case shares Movants' interests in promoting Republican candidates' electoral success, supporting Republican voters, conserving Republican Party resources, and protecting statutorily conferred rights upon Republican voters. Much less does any party adequately represent those interests. The Defendant is the Georgia Secretary of State, Compl. ¶¶47-48, who must necessarily represent "the public interest." *Coal. of Ariz./N.M. Counties for Stable Economic Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996). By contrast, Movants' interest is inherently "partisan." *La Union del Pueblo Entero*, 29 F.4th at 309. "Neither

the State nor its officials can vindicate such an interest while acting in good faith." *Id*. The Secretary has no interest in the election of Republican candidates, the mobilization of Republican voters, or the costs associated with either. Instead, as the Secretary of State acting on behalf of Georgia citizens and the State itself, Secretary Raffensperger must consider "a range of interests likely to diverge from those of the intervenors." *Meek*, 985 F.2d at 1478. Those clashing interests include: the interests of Plaintiff, *In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991), "the expense of defending the current [rules] out of [state] coffers," *Clark*, 168 F.3d at 461, and "the social and political divisiveness of the election issue" to the State, *Meek*, 985 F.2d at 1478.

These diverging interests make the Secretary less likely to present the same arguments, less likely to exhaust all appellate options, and more likely to settle. *Clark*, 168 F.3d at 461-62. By contrast, Movants care about the effect this case will have on the Republican Party, Republican candidates, and Republican voters. This stark divergence of interests meets the "minimal burden to show that the existing Defendants' representation of their interests, at the very least, *may* be inadequate." *Greene*, 2022 WL 1045967, at *4.

Additionally, the Secretary does not oppose Movants' intervention. As many courts have stressed, the government's "silence on any intent to defend [Movants'] special interests is deafening." *Conservation Law Found. of N.E., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *accord Utahns for Better*

16

*Transp. v. DOT*, 295 F.3d 1111, 1117 (10th Cir. 2002) (same). Because the Secretary "nowhere argue[s]" that he "will adequately protect [Movants'] interests," Movants have "raised sufficient doubt concerning the adequacy of [its] representation." *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *2 (D.C. Cir. Aug. 1, 2017). Movants thus should be granted intervention by right under Rule 24(a)(2).

## II. Alternatively, Movants are entitled to permissive intervention.

Regardless of whether the Court finds that Movants are entitled to intervene by right, they satisfy the statutory requirements for permissive intervention under Rule 24(b). Movants' "claim or defense" shares with "the main action a common question of law or fact." Fed. R. Civ. P. 24(b). And Movants' intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." *Id*.

Permissive intervention may be the simplest path for this Court to grant the motion. To grant permissive intervention, this Court need not even find that Movants are inadequately represented, *Black Voters Matter*, No. 1:20-cv-4869, Doc. 42 at 5, or consider whether Movants have "a direct personal or pecuniary interest in the subject of the litigation," *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940). Unsurprisingly, this Court and many other federal courts have held that permissive intervention by Republican Party organizations is justified in similar election disputes. *See, e.g., Ga. State Conf. of*

*NAACP*, Doc. 40, No. 1:21-cv-1259, at 5-7; *Swenson v. Bostelmann*, Doc. 38, No. 20-cv-459 (W.D. Wis. June 23, 2020); *Priorities USA v. Nessel*, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020).

The requirements of Rule 24(b) are met here. Movants will raise defenses that share common questions of law and fact with existing parties. Plaintiffs allege that Georgia's mailing-address requirements for homeless voters and voter-initiated verification process to remove deceased persons and non-residents from the state's voter rolls violate the NVRA and the First and Fourteenth Amendments. Compl. ¶¶90-129. Movants deny each of these allegations. Movants' defenses and those brought by Secretary Raffensperger "ultimately turn on the same legal issue," the "constitutional validity of the [challenged statute]." *Greene*, 2022 WL 1045967, at *4. Thus, Movants and the Secretary have questions of law and fact in common.

Moreover, Movants' intervention will not unduly delay this litigation or prejudice anyone. There is no undue delay or prejudice where a proposed intervenor files its motion when "litigation is in a relatively nascent stage." *Ga. Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 691 (N.D. Ga. 2014). "Whatever additional burdens adding [Movant] to this case may pose, those burdens fall well within the bounds of everyday case management." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 200 (2022). In addition, responding to Movants' arguments will not unduly prejudice Plaintiffs, Fed. R. Civ. P. 24(b)(3),

since Plaintiffs "can hardly be said to be prejudiced by having to prove a law-suit [they] chose to initiate," *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). Movants also commits to submitting all filings in accordance with whatever briefing schedule the Court imposes, "which is a promise" that undermines claims of undue delay. *Emerson Hall Assocs., LP v. Travelers Casualty Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19, 2016). Allowing Movants to intervene will allow the Court "to profit from a diversity of viewpoints as [Movants] illuminate[s] the ultimate questions posed by the parties." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017). In a "challenge to [Georgia] voting proce-dures," where the defendant is a state official, it "cannot be said with assurance that the existing parties will frame the issues so well that the proposed inter-vention will add nothing of value. Even good lawyers sometimes miss things." *Nielsen*, 2020 WL 6589656, at *1. Ultimately, where a court has doubts, "the most prudent and efficient course" is to allow permissive intervention. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 2002 WL 32350046, *3 (W.D. Wis. Nov. 20, 2002).

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court grant this motion and allow the RNC and GAGOP to intervene as Defendants.

19

Dated: October 11, 2024

Respectfully submitted,

/s/ William Bradley Carver, Sr.

Thomas R. McCarthy*
Gilbert C. Dickey*
Conor D. Woodfin*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com


*pro hac vice forthcoming

William Bradley Carver, Sr.
Georgia Bar No. 115529
HALL BOOTH SMITH, P.C.
191 Peachtree Street NE
Suite 2900
Atlanta, GA 30303
(404) 954-5000
BCarver@hallboothsmith.com

Baxter D. Drennon
Georgia Bar No. 241446
HALL BOOTH SMITH, P.C.
200 River Market Avenue
Suite 500
Little Rock, AR 72201
(501) 319-6996
BDrennon@hallboothsmith.com

*Counsel for Proposed Intervenor-Defendant*
*The Republican National Committee*

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 5.1(B) because it uses 13 point Century Schoolbook font.

*/s/ William Bradley Carver Sr.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 11, 2024, the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system, which will also send a notice of electronic filing to all counsel of record. Those parties who have not yet appeared will be served via email.

*/s/ William Bradley Carver Sr.*