# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

GEORGIA STATE CONF. OF THE
NAACP, *et al.*,

     *Plaintiffs*,

       v.

BRAD RAFFENSPERGER, in his official
capacity as Secretary of State of the State
of Georgia,

     *Defendant*.

Civil Action No. 1:24-cv-04287-SDG

# DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS
# PLAINTIFFS' COMPLAINT

## INTRODUCTION

Georgia legislators have continued to update Georgia election laws to address ongoing issues related to voter confidence in elections. Plaintiffs disagree with the most recent election integrity legislation, titled SB 189, but do not provide any basis for this Court to enjoin or limit its scope. Plaintiffs are two organizations, and their allegations cannot support direct or associational standing because they have not adequately alleged an injury in fact. Further, they cannot show that many of their claims are traceable to or redressable by the Secretary. Instead, they offer speculation about what they fear *might* happen, based on strained interpretations of statutes, which is not enough to invoke this Court's jurisdiction.

But even if this Court had jurisdiction, Plaintiffs have failed to state a claim. There is no unconstitutional burden on the right to vote imposed by SB 189 because voters are required to provide their residential address to register. Voters reporting their residence as a P.O. Box, where they do not live, should be evaluated by registrars. And homeless voters who do not have a place to receive mail should have a consistent and reliable location to receive election-related communications, which SB 189 provides. Neither are an increase over the usual burdens of voting. And the state interest in accurate voter rolls more than justifies any burden.

Further, the National Voter Registration Act (NVRA) provisions on which Plaintiffs rely are consistent with SB 189. Plaintiffs' proposed definition of

"nonresidential" makes no sense in context and establishing probable cause for purposes of hearing a challenge does not mean a voter will be removed from the registration rolls—it only aids the existing process for registrars to engage in their statutory duty to ensure the voter rolls are correct and that only eligible voters are allowed to vote. There is nothing in the NVRA that allows an ineligible voter to vote. Further, there is no violation of the uniformity provisions because none of the challenged processes involve systematic removal programs and registrars are required by law to change voter statuses as they become aware of information about those voters. This Court should dismiss Plaintiffs' Complaint.

## FACTUAL BACKGROUND

### I.  Georgia voter list requirements and processes.

Each county's board of registrars has the statutory responsibility for determining the eligibility of new individuals registering to vote. O.C.G.A. § 21-2-226(a). Those county boards also have the continuing duty of "examining from time to time the qualifications of each elector" over whom they have responsibility. O.C.G.A. § 21-2-228(a). So, while the Secretary of State maintains the official list of registered voters, both active and inactive, in a state database, county officials are ultimately responsible for the information entered into that statewide voter database. *See* O.C.G.A. § 21-2-50(a)(14); *see also Fair Fight Action, Inc. v. Raffensperger*, 634 F. Supp. 3d 1128, 1163 (N.D. Ga. 2022).

County registrars use an extensive list of factors to determine where a person resides for voting purposes. O.C.G.A. § 21-2-217. All of the factors must be considered and a single factor cannot be elevated above the others. *Handel v. Powell*, 284 Ga. 550, 554–55 (2008). The primary focus of the statutory factors is to determine the intent of the individual voter. O.C.G.A. § 21-2-217(a)(1). For example, when voters register and live in areas without house numbers and street names, the voter registration application advises them to include a drawing of their location to help identify the correct precinct. *See* https://sos.ga.gov/sites/default/files/forms/GA_VR_APP_2019.pdf at Instructions, ¶ 9; *see also* [Doc. 1, ¶ 56]. The form requires in two places that voters provide their "residence" or "residential" address. *Id*. at box 2; Instructions, ¶ 2.

Counties also have continuing obligations to update the voter registration list based on new data. That includes reviewing data for new felons, individuals declared mentally incompetent, and people who said they were not citizens when called for jury duty. O.C.G.A. § 21-2-231(c). Further, county officials are charged with removing individuals from the list of electors when they learn information showing someone has died. O.C.G.A. § 21-2-231(e.1); *see also Fair Fight Action*, 634 F. Supp. 3d at 1170. Individual electors can also request that their name be removed from the voter list. O.C.G.A. § 21-2-232.

In addition to these processes, Georgia law has long provided for two

methods of other voters challenging the eligibility of individuals on the voter list. Under O.C.G.A. § 21-2-229, electors can challenge the qualifications of new registrants and those on the voter list for their county to be listed as a voter, with the challenger bearing the burden of proof. *Id.* at (c). After a hearing, the decision of the registrars can be appealed. *Id.* at (e). Under O.C.G.A. § 21-2-230, a separate process exists to challenge the right of an elector to have their vote counted in a specific election. This type of challenge requires the registrars to consider whether probable cause exists to sustain the challenge. *Id.* If probable cause exists, the voter can still vote, but must resolve the challenge before voting or vote a provisional ballot until the challenge can be resolved. *Id.* at (d), (h). These challenge provisions are part of the duties of county registrars[1] to continue their examination of the list of voters to ensure it includes eligible voters. O.C.G.A. § 21-2-228(a).

## II.     Changes made in SB 189.

In the 2024 legislative session, SB 189 updated several provisions of Title 21, but only two sections of the bill are challenged in this case. In Section 4, SB 189 established a consistent and uniform mailing address for homeless voters who do not have a permanent address, clarified that voting in another state means the person has changed their residence for voting purposes, and added filings of

---

[1] Plaintiffs apparently believe the discretion to registrars is somehow dangerous, [Doc. 1, ¶ 74], but it is their duty to ensure the list of voters is accurate.

National Change of Address forms with the Post Office as a factor the registrars can consider. Section 5 defined probable cause for purposes of challenges under O.C.G.A. § 21-2-230, provided a window before certification of the election where challenges must be postponed, and clarified that challenges in one election continue through runoffs of that election. *Id.* at (b), (k).

As Plaintiffs acknowledge, the term "nonresidential" in Section 5 is not defined, [Doc. 1, ¶ 74], meaning that the "common usage" of the term governs. *In re Walter Energy, Inc.*, 911 F.3d 1121, 1143 (11th Cir. 2018) (quotation omitted). Determining the definition includes looking at the context and "dictionary definitions for guidance." *Id.*; *see also Spencer v. Specialty Foundry Prod. Inc.*, 953 F.3d 735, 740 (11th Cir. 2020).

Georgia law is clear that "[w]herever a form of the word 'reside' occurs either in the statutes or in the constitution of Georgia with respect to voting, it should be construed to mean 'domicile.'" *Holton v. Hollingsworth*, 270 Ga. 591, 593 (1999) (quoting *Avery v. Bower*, 170 Ga. 202, 206 (1930) (quotation marks omitted). Domicile is generally regarded as "a dwelling place" or "a place of residence." "Domicile," https://www.merriam-webster.com/dictionary/domicile (Oct. 24, 2024). This matters under Georgia law because an individual voter must be a "resident" of the state and the county where they are seeking to vote in order to be eligible. O.C.G.A. § 21-2-216(a)(4). To determine residency (or domicile),

O.C.G.A. § 21-2-217(a)(1) explains that a person's "residence" is "that **place** in which such person's **habitation** is fixed" (emphasis added). Thus, when considering the definition of a "nonresidential" address for purposes of O.C.G.A. § 21-2-230, it must be a **place** where a person is **unable to reside**. This contextual definition is bolstered by dictionaries, which generally refer to **nonresidential** as places that people do not live. *See* "nonresidential," Black's Law Dictionary (11th ed.) ("not being a place where people live"); https://www.merriam-webster.com/dictionary/nonresidential (Oct. 24, 2024) ("not used as a residence or by residents").[2] Despite an extended discussion in the Complaint about using zoning for determining "nonresidential" addresses, Plaintiffs point to no provision of Georgia law that would rely on zoning to determine the residential character of a particular address and, given the context, such a definition would make no sense and be inconsistent with the statutory structure.

### III.   State obligations under the NVRA.

The NVRA sets national requirements for voter registration. 52 U.S.C. §

---

[2] While not taking a position on lawsuits filed to enforce challenges brought under O.C.G.A. § 21-2-230(b), at least one of those pending lawsuits include references to challenges under the nonresidential address provision that are focused on individuals reporting their residence as "addresses of U.S. Post Offices, UPS Stores, or other Mail Center businesses," not using Plaintiffs' proposed approach of relying on zoning for that definition. *See, e.g., Henderson v. Abhiraman*, Case No. 24CV8564 (Sup. Ct. of DeKalb County Sept. 17, 2024), Application at ¶ 9.

20501(b). This includes opportunities to register to vote, 52 U.S.C. § 20503, and processes for changing addresses and conducting list maintenance, 52 U.S.C. § 20507. States may not conduct programs "the purpose of which is to systematically remove the names of ineligible voters" within 90 days of a federal primary or general election. 52 U.S.C. § 20507(c)(2)(A). This specifically does not include changes to the registration list at the request of the registrant, removal of felons, and removal for death. 52 U.S.C. § 20507(c)(2)(B). The 90-day provision does not provide, and Plaintiffs do not assert otherwise, that voters who do not retain all the qualifications to vote (including continued residency in Georgia) are allowed to have their vote counted because it does not bestow eligibility to ineligible voters.

## ARGUMENT AND CITATION OF AUTHORITY

### I.   Legal standard.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). While this Court must assume the veracity of well-pleaded factual allegations, it is not required to accept legal conclusions when they are "couched as [] factual allegation[s]." *Id.* at 678–79. In addition to the complaint, this Court may consider any matters appropriate for judicial notice. *Tellabs, Inc. v. Makor*

*Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.    Plaintiffs lack standing.

In federal court, "[s]tanding is 'built on a single basic idea—the idea of separation of powers.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (*AHM*); *see also TransUnion LLC v. Ramirez,* 594 U.S. 413, 422-423 (2021) (standing is "woven into" the Constitution). That is why, as part of the threshold standing inquiry federal courts must undertake in every case, plaintiffs must have "a *personal* stake" in the outcome, which "ensure[s] that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'" *AHM,* 602 U.S. at 379 (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 487 (1982)).

Instead, federal courts must only decide "Cases" or "Controversies." U.S. CONST. Art. III, § 2. Courts apply the three-part inquiry requiring a plaintiff demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief. *See Summers v. Earth Island Institute*, 555 U. S. 488, 493 (2009); *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1113 (11th Cir. 2022).

Organizations can establish standing through a direct injury or associational

standing. *See Arcia v. Sec'y of Fla.*, 772 F.3d 1335, (11th Cir. 2014). Plaintiffs here are claiming standing under both theories. *See, e.g.*, [Doc. 1, ¶¶ 21–24].

### A.     Plaintiffs do not have organizational standing.

"Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia*, 772 F.3d at 1341. "In doing so, however, organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *AHM*, 602 U.S. at 392–93. And like individuals, an organization "may not establish standing based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct…" *Id.* (quoting *Valley Forge*, 454 U.S. at 486). This is true "no matter how longstanding the interest and no matter how qualified the organization." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).

> 1.     *Neither organization has adequately pleaded an injury in fact through resource diversion.*

Plaintiff Georgia NAACP describes its mission as "eliminat[ing] racial discrimination through democratic processes and ensur[ing] the equal political, educational, social, and economic rights of all persons, in particular Black Americans." [Doc. 1, ¶ 23]. It accomplishes this, in part, by "protect[ing] voting rights, litigation, advocacy, legislation, communication and outreach, including work[ing] to promote voter registration, voter education, get out the vote

("GOTV") efforts, election protection, and census participation." *Id.* at ¶ 24. Georgia NAACP claims its interpretation of the provisions of SB 189 forces it to divert resources from its usual activities to address the impact of the law. *Id.*

For example, because of SB 189, the Georgia NAACP alleges its unit at Spelman College will need to "divert resources to change [its voter education] programming in light of S.B. 189…" *Id.* at ¶ 28. It also contends that it will have to "modify its messaging to Black voters and other voters of color," as well as "divert resources from its ongoing election protection, advocacy, and GOTV efforts to educate and assist voters impacted by these provisions." *Id.* at ¶ 30.

Similarly, Plaintiff Georgia Coalition for the People's Agenda ("GCPA") alleges that it "works to encourage and support voter registration and participation, particularly among Black and other underrepresented communities in Georgia," such as homeless, housing-insecure individuals, and students. *Id.* at ¶ 34. Due to SB 189, GCPA alleges it "has had to, and will continue to have to, divert attention of its staff and membership away from its other programmatic areas and focus instead on voter education, defense, and support." *Id.* at ¶ 40. It claims to have taken time away from other voting-related activities to spend days at challenge meetings and to support those "who might be susceptible to challenges under Section 5 of S.B. 189." *Id.* at ¶¶ 41–42.

These purported diversions are not enough for the organizations to show

an injury. "A plaintiff must show 'far more than simply a setback to the organization's abstract social interests.'" *AHM,* 602 U.S. at 394 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). And standing cannot be created "when an organization diverts its resources in response to a defendant's actions." *Id.* at 395. Indeed, such a "theory would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.*

The resources Plaintiffs purport to expend in response to SB 189 do not directly counteract any conduct that has been specifically targeted to *them* as an organization. Other cases have required a more direct and concrete injury to the organization itself. For example, the defendant in *Havens Realty* provided false information about apartment availability *directly* to black employees of the housing organization, HOME, which "directly affected and interfered with HOME's core business activities." *Havens Realty,* 455 U.S. at 379; *see also AHM*, 602 U.S. at 395. Not so here, where the organizations complain about a law that exclusively governs the conduct of *others*. While Plaintiffs may have a strong interest in those other individuals, an organization "may not establish standing based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct..." *Id.* at 394.

Further, Plaintiffs' allegations almost exactly match allegations found

insufficient in *AHM*. In that case, allegations about conducting studies, educating the organization's members and the public, and engaging in public advocacy and education were insufficient to show an injury—even when those expenditures resulted in less spending on other priorities. *AHM,* 602 U.S. at 394.

Thus, Plaintiffs cannot establish an injury by educating their members or the public and providing them advice about how to navigate the challenge process. Nor is attendance at challenge hearings where the organization itself is not the subject of the challenge (which, of course, it never could be) sufficient to show a concrete and particularized injury to the organization. And allocating resources to "voter education, defense and support," [Doc. 1, ¶ 40] is no different than conducting studies and educating the public, which was insufficient in *AHM*. *Compare* [Doc. 1, ¶ 40] *with AHM*, 602 U.S. at 394. "An organization cannot manufacture its own standing in that way." *AHM,* 602 U.S at 394.

Because Plaintiffs have not adequately alleged a direct injury to themselves as an organization resulting from SB 189, they have not established an injury in fact and thus cannot proceed under a diversion-of-resources theory. But even if they could demonstrate such an injury, they cannot trace the injury to the Secretary.

2.    *Plaintiffs' challenges are not traceable to the Secretary.*

Plaintiffs cannot trace their alleged injury regarding Section 5 of SB 189 to

the Secretary because the voter-challenge provisions are enforced by each of Georgia's 159 counties. "To satisfy the causation requirement of standing, a plaintiff's injury must be 'fairly traceable to the challenged action *of the defendant*, and not the result of the independent action of some third party not before the court.'" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (emphasis added). "Like the injury in fact requirement, the causation requirement screens out plaintiffs who were not injured by the defendant's action. Without the causation requirement, courts would be 'virtually continuing monitors of the wisdom and soundness' of government action." *AHM*, 602 U.S. at 383–84 (quoting *Allen v. Wright*, 468 U. S. 737, 760 (1984)) (quotation marks omitted). Applying that rule to Plaintiffs' claims about Section 5 of SB 189, codified at O.C.G.A. § 21-2-230, the statute governs the conduct of registrars of the individual counties and not the Secretary. So there can be no causal link between the complained-of law and the Secretary. *See Fair Fight Action, Inc. v. Raffensperger*, No. 1:18-CV-5391-SCJ, 2021 WL 9553855, at *12 (N.D. Ga. Feb. 16, 2021) (dismissing claim regarding polling places because state law assigned responsibility to counties). For this reason, Plaintiffs' Complaint should be dismissed as to the Section 5 claims against the Secretary.

Additionally, the injury complained of related to the probable cause and homeless address provisions of SB 189 is too speculative to establish the

traceability necessary for standing. "The causation requirement precludes speculative links—that is, where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs." *AHM*, 602 U.S. at 383. But this speculation is infused in each part of the Complaint.

Indeed, to reach the purported injury under the challenge provisions requires some elector to discover information indicating that some individual somehow connected to one of Plaintiffs may not be eligible. Then, that elector must file a challenge. Then the county board of registrars must decide to hear the challenge and rule in a way that is unfavorable to the person Plaintiffs allege an interest in. There are far too many unknowns in this chain of events and the Secretary has no involvement. And the homeless address provisions do not lead to removal except through a similar chain of events. Both are directly contrary to the requirement that the alleged "injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Clapper v. Amnesty Int'l*, 568 U. S. 398, 409 (2013).

Because Plaintiffs' claims regarding SB 189 are too speculative, Counts I, II, III, and IV should be dismissed.

**B.    Plaintiffs do not have standing to bring this action on behalf of their respective members.**

Under an associational standing theory, an organization may bring suit "on behalf of its members when its members would otherwise have standing to sue in

their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000). "To establish standing under this theory, an organization must 'make specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm.'" *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203 (11th Cir. 2018) (quoting *Summers*, 555 U.S. at 498)). But "an organization's self-descriptions of its membership" are not sufficient to make this showing. *Id.* (cleaned up).

In *Ga. Republican Party,* a political organization challenged a rule that governed the political contributions of covered individuals. 888 F.3d at 1200. The Eleventh Circuit held the plaintiff lacked standing because "the Georgia Party has failed to allege that a specific member will be injured by the rule, and it certainly offers no evidence to support such an allegation." *Id.* at 1203.

Here, Plaintiffs are in the same boat. GCPA broadly alleges that it has members that "*might* be *susceptible* to challenges under Section 5 of S. B. 189." [Doc. 1, ¶ 42] (emphasis added). Similarly, Georgia NAACP alleges that the dormitory residences of some of its student members "*may be* classified as 'nonresidential' in zoning designations in some jurisdictions making student unit members… *vulnerable*" to challenges under SB 189. *Id* at ¶ 27 (emphasis added). But these

15

allegations are insufficient for at least two reasons. First, they ignore the requirement "that an organization name at least one member who can establish an *actual or imminent* injury." *Ga. Republican Party,* 888 F.3d at 1204 (emphasis added). As a result, this Court is left to guess whether any of Plaintiffs' members are *actually* among the individuals who could be affected by SB 189. Particularly with respect to the requirements surrounding homeless voters found in Section 4 of SB 189, neither organization put forth a credible allegation that their membership contains an individual so situated.

But even if they properly identified a member, Plaintiffs' challenge to SB 189 is not sufficiently imminent to establish standing for any members to whom the organizations could potentially point. "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper,* 568 U.S. at 409 (emphasis in original) (quoting *Lujan,* 504 U.S. at 565 n.2). Indeed, the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Id.* (alteration and emphases in original) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990)). And, perhaps most relevant here, it has "been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers

will exercise their judgment." *Id*. at 413.

Nevertheless, "guesswork as to how independent decisionmakers will exercise their judgment" is precisely what Plaintiffs rely on here to challenge the probable cause provisions in Section 5 of SB 189. And as already discussed with respect to organizational standing, Plaintiffs' complaint on behalf of its members for both sections requires a tenuous chain of events that is insufficient to establish standing. For example, a member would only have an injury *if* another voter challenged them, then *if* the county board of registrars decided to hear the challenge, and *if* the board of registrars ruled against the member. The uncertain decisions—which may never come to pass—of each of these independent actors not before the Court fail to establish the necessary traceability to the Secretary, even if he had a role in the voter-removal process set forth in Section 5 of SB 189. And associational standing does not solve the other traceability problem: that the Secretary is entirely uninvolved in either challenged process.

For the foregoing reasons, Plaintiffs cannot establish standing by bringing this action on behalf of their members. They have not alleged sufficient information to do so in the first place. But even if they had, Plaintiffs rely on speculative harms against unnamed members that lack the required imminence for Article III standing. This Court should dismiss the Complaint on jurisdiction alone. But if this Court considers the merits, it should dismiss the Complaint for

failure to state a claim on any of the six counts.

### III.    Plaintiffs have failed to state a claim under the Constitution (Counts I, II, and V).

Plaintiffs challenge Sections 4 and 5 of SB 189 as unconstitutional (Counts I, II, and V). These kinds of claims are evaluated "under what is known as the *Anderson-Burdick* test, weighing 'the character and magnitude of the asserted injury' to voting rights 'against the precise interests put forward by the State as justifications for the burden imposed by its rule.' *Burdick v. Takushi*, 504 U.S. 428, 434 [] (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 [] (1983) (internal quotation marks omitted))." *Curling v. Raffensperger*, 50 F.4th 1114, 1121 (11th Cir. 2022).[3] The inquiry is a sliding scale, with severe burdens subjected to strict scrutiny while reasonable and nondiscriminatory burdens can be justified by the

---

[3] While Plaintiffs claim the standard for their procedural due process claim is *Matthews v. Eldridge*, 424 U.S. 319, 344 (1976), [Doc. 1, ¶ 103], that is incorrect. In the Eleventh Circuit, "we must evaluate laws that burden voting rights using the approach of *Anderson* and *Burdick*." *New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1282 (11th Cir. 2020) (quoting *Jacobson*, 974 F.3d at 1261) (applied to due-process claim); *see also Bell v. Raffensperger*, No. 1:21-CV-02486-SEG, 2022 WL 18243320, at *10 n.12 (N.D. Ga. Dec. 6, 2022) (applying *Anderson/Burdick* to procedural due process claim); *Fair Fight Action, Inc. v. Raffensperger*, No. 1:18-CV-5391-SCJ, 2021 WL 9553856, at *29 (N.D. Ga. Mar. 31, 2021) (same). But even if that was not the proper application of the law in this Circuit, procedural due process under the *Mathews* framework is only utilized for adjudicative actions, not legislative ones. *Jones v. Governor of Fla.*, 975 F.3d 1016, 1049 (11th Cir. 2020). Because Plaintiffs do not challenge any individual decisions of county boards related to voter challenges, they only challenge legislative actions and also cannot access the *Mathews* framework for that reason.

"State's important regulatory interests in conducting orderly elections." *Id*. Courts use this balancing test because there is "no license for 'second-guessing and interfering with' state decisions; the Constitution *charges States, not federal courts, with designing election rules*." *Id*. (quoting *New Georgia Project*, 976 F.3d at 1284) (emphasis added). The "state undisputedly has a compelling interest in preserving the integrity of its election process," maintaining the accuracy of it its voter rolls and "promoting voter confidence." *Common Cause/GA v. Billups*, 554 F.3d 1340, 1353 (11th Cir. 2009) (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4, (2006) and citing *Crawford v. Marion County Election Bd*., 553 U.S. 181, 197 (2008)).

Further, it is not enough to just show some burden on the right to vote. Plaintiffs "must show, at the very least, that the burdens imposed 'represent a significant increase over the usual burdens of voting.'" *Id*. (quoting *Crawford*, 553 U.S. at 198). Applying these principles to Plaintiff's various constitutional claims demonstrates the lack of any violation by SB 189.

### A.   Section 5 does not violate the Constitution (Counts I and II).

Plaintiffs claim that the probable-cause provisions of SB 189 applied to nonresidential addresses imposes "a severe and unjustified burden on the right to vote for eligible Georgia voters who reside at addresses deemed 'nonresidential' in violation of the First and Fourteenth Amendments" to the Constitution. [Doc. 1, ¶ 99]. But, as discussed above, Georgia law requires each elector to "be a *resident*

19

of the state and of the county or municipality in which he or she seeks to vote."
O.C.G.A. § 21-2-216(a)(4). And a nonresidential address is an address where a
person cannot reside. *See above*, Factual Background, § 2. Despite Plaintiffs'
baseless interpretation of the statute, residence halls on college campuses, student
dormitories, residential housing for the elderly and nursing homes, even homeless
shelters, are all places where people live and could not fall within the meaning of
"nonresidential" as Plaintiffs claim. [Doc. 1, ¶ 96]. And they can point to no
election official who has ever applied the term "residence" in a voter challenge
case in the manner Plaintiffs suggest. Voters must provide their residential address
when they register and cannot reside in a P.O. Box.

Applying this background, there is no burden on the right to vote by
requiring voters to provide a correct residential address, especially when being a
resident is a requirement to be registered. O.C.G.A. § 21-2-216(a)(4). At most, it is
nothing more than an "ordinary and widespread burden" which requires
"nominal effort of everyone." *Crawford*, 553 U.S. at 205 (Scalia, J., concurring).
When faced with such a small burden, this requirement is justified by the State's
regulatory interests in ensuring accurate voter rolls. *Curling*, 50 F.4th at 1121.

### B.    Section 4 does not violate the Constitution (Count V).

Plaintiffs also claim that requiring homeless individuals who do not have a
permanent mailing address to receive election mail at a centralized location is a

violation of the Constitution. [Doc. 1, ¶¶ 119–26]. But ensuring that a person who is homeless and has no place to receive mail has a free, reliable, and consistent place to do so does not violate the Constitution.

Requiring registrars to use an address where homeless voters are able to receive election mail, even if it requires a trip to the registrar's office, is not a burden on the right to vote or is only a minimal burden—just like obtaining a photo ID in order to vote in person or re-registering if removed during list maintenance. *See Crawford*, 553 U.S. at 198–99 (photo ID); *Fair Fight Action*, 2021 WL 9553856 at *18 (re-registering). Thus, there is no increase over the usual burdens of voting by requiring a specific address for voters without one. *Curling*, 50 F.4th at 1123. Indeed, there is no added burden because a voter without a home would still have to go to the post office or other location to check their mail. SB 189 requires Georgia county registrars to have a uniform, secure place for homeless voters to receive election mail, and they must offer that service with no charge to the voters. This new provision benefits voters who are homeless.

But even if this Court looks further at the potential burden, Plaintiffs' Complaint does not allege any "reliable evidence that quantifies the extent and scope of the [alleged] burden imposed by the Georgia statute." *Billups*, 554 F.3d at 1354. The only fact alleged by Plaintiffs that could be relevant is a 2022 count of homeless individuals, [Doc. 1, ¶ 51], but that allegation does not indicate how

many of those individuals would otherwise be eligible voters and how many do not have a permanent address. By its terms, it includes both sheltered and unsheltered individuals, at least some of whom would have a permanent address. But even if every individual alleged by Plaintiffs would be impacted by SB 189, the total is 0.13% of the registered voters in Georgia,[4] all of whom would already have to check their mail elsewhere if they did not have a permanent mailing address. Thus, any burden on the right to vote is minimal at best.

Without a more significant burden, the important regulatory interests of the state in conducting orderly elections and ensuring accurate voter rolls more than justifies any burden on the right to vote. *Curling*, 50 F.4th at 1121. As a result, this Court should dismiss Counts I, II, and V.

## IV.   Plaintiffs have failed to state a claim against the Secretary under the NVRA (Counts III, IV, and VI).

Plaintiffs also bring claims against the Secretary under the NVRA in Counts III, IV, and VI. But even assuming Plaintiffs' alleged facts are true, they have shown no right to relief under the NVRA. Unlike the Voting Rights Act, the NVRA specifically provides a private right of action for individuals to bring a case in this

---

[4] Currently, Georgia has more than 8.2 million registered voters. Secretary of State, *Election Data Hub*, https://sos.ga.gov/election-data-hub. This Court may take judicial notice of this fact on a motion to dismiss. *See Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) (using public record); *see also Fusaro v. Cogan*, 930 F.3d 241, 246 (4th Cir. 2019) (judicial notice of registered voters).

Court after sufficient notice. 52 U.S.C. § 20510(b). Plaintiffs have provided notice, [Doc. 1-1], and are proceeding under the statute.

**A.    The challenged provisions of SB 189 do not violate the NVRA uniformity requirement (Counts III and VI).**

Plaintiffs first claim that Sections 4 and 5 of SB 189 violate Subsection 8(b) the NVRA. [Doc. 1, ¶¶ 109–113]. That provision requires that list-maintenance programs be uniform and nondiscriminatory. 52 U.S.C. § 20507(b)(1). Initially, this provision by its terms only relates to voters who are already registered, not to "individuals not yet registered to vote." *Mi Familia Vota v. Fontes*, 691 F. Supp. 3d 1077, 1095 (D. Ariz. 2023). And this provision is limited to state *removal programs*, not to every component of the administration of voter registrations, because its text makes that clear. It applies to a "program or activity to protect the integrity of the electoral process," 52 U.S.C. § 20507(b)(1), which is only applicable to "state removal programs." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 764 (2018).

1.    *The NVRA uniformity requirement is inapplicable to the probable-cause provision (Count III).*

The NVRA uniformity requirement is not applicable to the probable-cause provisions of Section 5 of SB 189, because those provisions are not part of a state removal program, but rather trigger an individualized process to evaluate whether information about a voter on the rolls is correct. If a challenge is pending against a voter and they show up to vote, they may be able to resolve the challenge

at the polling place, and if not, they can vote a provisional ballot until the challenge is resolved. O.C.G.A. § 21-2-230(i). Thus, they are not removed because they are discriminated against or as part of a state list-maintenance program. Instead, the challenge *initiates* the probable-cause requirements, which results in an additional investigative process. When the probable-cause process is carried out, it involves the kind of "rigorous individualized inquiry" that courts have previously considered acceptable under the NVRA and which is not part of a removal program. *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014). As a result, Count III should be dismissed for failure to state a claim.

### 2. *The NVRA uniformity requirement is inapplicable to the mailing address provision (Count VI).*

Like the requirements for probable cause, the requirement that county registrars provide a free, secure, and constant mailing address for homeless voters without another address for election mail does not violate the NVRA uniformity requirement, because it is not a state program to remove voters. *Husted*, 584 U.S. at 764. But even if the NVRA uniformity requirement applied, it is uniform and nondiscriminatory because everyone who is similarly situated is treated the same way—the registrar's office provides this service to all affected individuals without application or charge. This provides a clear location for any homeless voter to receive election mail if they do not have another means of receiving mail.

Thus, Plaintiffs have not sufficiently pleaded any violation of the NVRA in

Counts III and VI and those claims should be dismissed.

**B.   The probable-cause provision of SB 189 does not violate the NVRA change-in-residence requirement (Count IV).**

Plaintiffs also challenge Section 5 of SB 189 as a violation of Subsection 8(d) of the NVRA, which sets forth the methods of removing a voter's name for a change of residence. [Doc. 1, ¶¶ 114–118]. But that section is limited to removals that occur "*on the ground* that the registrant has changed residence…" 52 U.S.C. § 20507(d)(1) (emphasis added). That is not how the probable-cause provisions of SB 189 are implemented. Voters are not removed from the voter rolls solely "on the ground" of a change in residence. Instead, the challenge *initiates* the probable-cause requirements, which results in an additional investigative process. And again, these "rigorous individualized inquir[ies]" have previously been considered acceptable under the NVRA. *See Arcia*, 772 F.3d at 1346.

Because the probable-cause provisions of O.C.G.A. § 21-2-230 do not implicate Section 8(d) of the NVRA, Count IV should be dismissed in its entirety.

## CONCLUSION

Plaintiffs have a policy disagreement with the State. But this Court is not the correct location to hear that dispute because Plaintiffs do not have standing. And even if they did, Plaintiffs have failed to state a claim for relief under federal law and the Constitution. This Court should dismiss Plaintiffs' Complaint and allow the legislatively chosen solution to remain in force.

Respectfully submitted this 25th day of October, 2024.

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Elizabeth T. Young
Senior Assistant Attorney General
Georgia Bar No. 707725
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@clarkhill.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@clarkhill.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@clarkhill.com
**Clark Hill PLC**
800 Battery Ave SE
Suite 100
Atlanta, Georgia 30339
678.370.4377 (phone)

*Counsel for Secretary of State Brad Raffensperger*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned certifies that the foregoing Brief has been prepared in Book Antiqua 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson